UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cr-114 |
| | ) | |
| JACKSON ELLIOT FLEMING | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
CONSOLIDATED MOTIONS IN *LIMINE***

Comes now the United States of America, by its counsel, Adam L. Mildred, United States Attorney for the Northern District of Indiana, through Francis Sohn and Thomas M. McGrath, Assistant United States Attorneys, and respectfully submits the following response to Defendant Jackson Elliot Fleming's consolidated motions *in limine:*

1. **Responses to the Defendant's Alleged Threatening Communication Are Relevant in Determining Whether the Alleged Communication Was a True Threat.**

The Defendant argues that "any response by any alleged intended target is not relevant to prove the elements of the [18 U.S.C. § 875(c)] charge itself" because the "government does not have to show that any alleged intended target read the threat or knew there was a threat against them." DE 42 at 3-4. The Government, however, is required to prove that the communication in question conveyed a "real possibility that violence will follow." *Counterman*

1

*v. Colorado*, 600 U.S. 66, 74 (2023). The Supreme Court has been very clear that "whether the speaker is aware of, and intends to convey, the threatening aspect of the message is not part of what makes a statement a threat[.] The existence of a threat depends not on the mental state of the author, but on what the statement conveys to the person on the other end." *Id.* (cleaned up) (citing *Elonis v. United States*, 575 U.S. 723, 733 (2015)).

In light of these principles, the Seventh Circuit recently reiterated its long-standing position that "'both the victim's response to a statement and the victim's belief that it was a threat are relevant" to determining whether a message conveys the real possibility of violence. *U.S. v. Sheikh*, 164 F.4th 629, 634 (7th Cir. 2026) (cleaned up) (citing *U.S. v. Parr*, 545 F.3d 491, 501 (7th Cir. 2008)). *See also U.S. v. Saunders*, 166 F.3d 907, 913 (7th Cir. 1999) ("[O]ur circuit also treats as relevant evidence both the victim's response to a statement and the victim's belief that it was a threat[.]")[1]

Indeed, in *Sheikh*, the receipt of the threatening communication was

---

1 The Second, Ninth, and Tenth Circuits have all reached similar conclusions. *See U.S. v. Dennis*, 132 F.4th 214, 229-30 (2nd Cir. 2025) ("Proof of the effect of the alleged threat upon the addressee is highly relevant in determining if a communication objectively constitutes a true threat.") (cleaned up); *U.S. v. Martis*, 2024 WL 957522, at *1 (9th Cir. March 6, 2024) ("Nor was it an abuse of discretion to allow the aides to testify about their emotional responses to Martis's phone calls because evidence of the recipient's state of mind, as well as his actions taken in response are highly relevant in establishing whether a statement could reasonably be read as containing a threat of injury.") (cleaned up); *U.S. v. Stevens*, 881 F.3d 1249, 1254 (10th Cir. 2018) (noting that "where a statement was made and how an audience reacted" is relevant to whether a communication constituted a true threat).

2

even more attenuated than in the instant case. There, the recipients of the threat only learned about it from law enforcement. *See Sheikh*, 164 F.4th at 632. In this case, the Government will present evidence from two witnesses associated with the Naval Academy – Midshipman 1 and Midshipman 2 – who directly saw the threatening post themselves and considered it serious enough to report it to a superior officer and NCIS, respectively. A third witness – Captain A – also saw the threat after learning of those reports and took action to address it. The testimony will focus on the reporting of the perceived threat, and the steps the Naval Academy took to address it. It will also address related issues, including but not limited to evidence that the threatening post was published through Jodel, a social media application that was heavily used among members of the Naval Academy community both at the time of the threat and when the Defendant attended the Naval Academy. Accordingly, under *Sheikh*, such evidence is plainly relevant within the meaning of FRE 401 on the question of whether the allegedly threatening post constituted a true threat.

**2. Evidence of Responses to the Defendant's Alleged Threatening Communication is not Unduly Prejudicial.**

Defendant argues that testimony from military personnel who were at the Naval Academy when the alleged threatening communication was posted

will result in jurors being "emotionally swayed by the events which took place" afterwards, and that such evidence should therefore be excluded under FRE 403.   The Defendant also argues that, based on the volume of certain evidence provided in discovery – e.g. 911 calls, social media posts, and media coverage – presentation of the testimony related to the response would result in "prejudicial overload where the jury's attention is focused mainly on the response of the Naval Academy in the aftermath of these charges, not on the actual charges and elements themselves."   DE 42 at 5.

As noted above, the Defendant's attempt to distinguish between "the response of the Naval Academy" and the "actual charges and elements" is substantively wrong under controlling Seventh Circuit and Supreme Court precedent.   Moreover, the risk of "prejudicial overload" is practically non-existent, as the Government's presentation of response-related evidence during its case-in-chief will primarily consist of the testimony of three witnesses directly associated with the Navy – Midshipman 1, Midshipman 2, and Captain A.   The Government expects that these witnesses will complete their testimony in one day, and does not anticipate introducing evidence during its case-in-chief related to the response of individuals or entities outside of the Navy.   The Government's position is that the jury, in determining whether the threat was in fact a true threat, must hear about how seriously the threat was

taken, including but not limited to the fact that the threat was the proximate cause of the lockdown of a major educational and military institution.

While the above-referenced witnesses may also testify as to their experiences on the day when the alleged threat was made, the Government also intends to call Midshipman 3. Evidence produced in discovery demonstrates that Midshipman 3 was shot during the lockdown that followed the posting of the alleged threats. The Government anticipates that Midshipman 3 may testify about his shooting, the events leading up to it, and his mental state throughout.

The Defendant argues that the shooting constitutes "conduct he was not involved in" and that "does not relate at all to the elements of the offense." DE 42 at 5. An officer-involved shooting, however, is precisely the kind of risk that a hoax threat of violence may engender on a college campus, especially one like the Naval Academy, where law enforcement must account for students who are trained in using firearms. Moreover, even if testimony about the shooting itself is unduly prejudicial – which the Government does not concede – Midshipman 3 may still provide relevant testimony as to the psychological impact that the events had on him leading up to the shooting, which all stemmed directly from the Defendant's original posting. The jury has a right to hear how the Defendant's alleged threat impacted the mental health of his

5

former peers at the Naval Academy between the time that the post was made and the time when they knew they were safe. This is so because the essence of true threats is that they "subject individuals to fear of violence and to the many kinds of disruption that fear engenders." *Counterman*, 600 U.S. at 74 (cleaned up). The Government understands, as was discussed at the pretrial conference, that there may be a line past which it may be less productive to elicit evidence of the consequences of the Defendant's actions. That line, however, should take into account that the response to a threat is direct evidence of how that threat was perceived.

### 3. Defendant's Previous Attendance at the Naval Academy Is Highly Relevant.

During its case-in-chief, the Government intends to present evidence that the Defendant previously attended the Naval Academy and separated prior to graduating. Such information is essential to contextualize the Defendant's alleged threat, including why he decided to post it to a social media page used almost entirely by Naval Academy personnel. As such, evidence of the bare fact that the Defendant previously attended the Naval Academy is highly relevant. If the jury is not allowed to hear such evidence, it will be missing crucial information related to why the Defendant chose to threaten the Naval Academy, rather than any other institution of higher learning.

The Defendant also argues that if the jury so much as hears evidence that he previously attended the Naval Academy, it "could make inferences against [him] and therefore be prejudiced against [him] while having no basis for those prejudices." DE 42 at 7. The mere fact that an individual previously attended an educational institution, however, does not give rise to the inference that the separation was for a negative reason. To the extent that any such inference may arise, the Government would not oppose a limiting instruction to the jury.[2]

### 4. Evidence of Chats Outside of Jodel Demonstrate Knowledge and Consciousness of Guilt and Should Not Be Excluded

The Government intends to introduce evidence at trial related to Instagram messages – found on both on Defendant's cell phone and via a search warrant to Meta (the owner of Instagram) – that it believes directly refer to the allegedly threatening message in question. Specifically, in one group chat setting, the Defendant indicated that he knew that the FBI was investigating him shortly after the threatening message was posted. Additionally, in a one-on-one chat with a graduate of the Naval Academy, the Defendant wrote "currently being screamed at by parents. Think the fbi's

---

[2] While the Government does not intend to introduce any evidence of the reason for the Defendant's separation from the Naval Academy during its case-in-chief, it reserves the right to do so on rebuttal, if appropriate.

7

going to look at phone.  Might have to delete all socials."  The Defendant further wrote that he felt "so sick that [he] brought this problem to [his] family."  When the other individual in the conversation asked him if he was serious, the Defendant answered, "100% super serious my mom told them to come back with a warrant."

Evidence produced in discovery demonstrates several key additional facts.  First, these conversations occurred after a member of the Chesterton Police Department visited the Defendant's home at the NCIS's request. Second, the phone that was seized from the Defendant shortly after these conversations occurred contained evidence that Jodel had been previously installed, and that it had been used around the time that the threatening message was posted.  However, Jodel did not appear on the installed application list, indicating that, at some time between the above-quoted discussions and the seizure of the phone, the Defendant did in fact delete one social media application – Jodel itself.  Coupled with the conversations quoted above, the Government will use these facts to establish the Defendant's consciousness of guilt – a purpose the Seventh Circuit has long held to be appropriate.  *See U.S. v. Robinson*, 161 F.3d 463, 468-70 (7th Cir. 1998).  The Government may also use these materials – as well as other materials from Instagram and Jodel – to establish that the Defendant was the user of the Jodel

account and was familiar with life at the Naval Academy.[3]

***

The Government does not generally contest the other aspects of the Defendant's motion *in limine* related to (1) the prohibition of speculative testimony from non-expert witnesses, and (2) the sequestration of witnesses.[4] However, for the reasons stated above, the Government respectfully requests that the remainder of the Defendant's motion *in limine* be **DENIED**.

Respectfully submitted,

ADAM L. MILDRED
UNITED STATES ATTORNEY

By:    */s/ Francis Sohn*
Francis Sohn
Thomas M. McGrath
Assistant United States Attorneys

---

[3] While the Government agrees that many of the messages and images recovered from the Defendant's cell phone and from search warrant returns include inflammatory rhetoric – including but not limited to racist and homophobic language – it does not intend to seek the admission of such messages during its case-in-chief.   Nevertheless, the Government reserves the right to use such messages in rebuttal, if appropriate under the circumstances.   That is, while such messages are not relevant to establishing the Defendant's consciousness of guilt, or guilt itself, they may be relevant to the credibility of any witness – whether the Defendant or a character witness – who testifies that the Defendant did not hold such views.

[4] The Government will request that its case agent be exempt from this request, as is customary.